Matthew C. Williams
ID Bar No. 6271
WILLIAMS LAW, PLLC
812 First St. S.
Nampa, ID 83651
Telephone: (208) 908-6066
matt@williamslawoffice.net

*Counsel for Plaintiffs*

*\* Admitted Pro Hac Vice*

Tyson C. Langhofer*
VA Bar No. 95204
Michael R. Ross*
TN Bar No. 35304
Mathew W. Hoffmann*
DC Bar No. 1617417
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
tlanghofer@ADFlegal.org
mross@ADFlegal.org
mhoffmann@ADFlegal.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
CENTRAL DIVISION

| | |
|---|---|
| PETER PERLOT, MARK MILLER, RYAN ALEXANDER, and RICHARD SEAMON, <br><br> *Plaintiffs,* <br><br> v. <br><br> C. SCOTT GREEN, President of the University of Idaho, BLAINE ECKLES, Dean of Students, ERIN AGIDIUS, Director of the Office of Civil Rights & Investigations, and LINDSAY EWAN, Deputy Director of the Office of Civil Rights and Investigations, all individually and all in their official capacities, <br><br> *Defendants.* | Civil Case No. 3:22-cv-00183-DCN <br><br> PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED HEARING [DKT. 7] |

TABLE OF CONTENTS

Table of Authorities ........................................................................................................... iii

Introduction ........................................................................................................................ 1

Argument ........................................................................................................................... 1

    I.    Plaintiffs will likely succeed on the merits of their First Amendment claims. ................................................................................................................. 1

        A.    Defendants' no-contact orders and Policies fail free speech strict scrutiny. .................................................................................................... 1

            1.    Defendants have no compelling interest to censor religious speech on campus. ................................................................... 2

                a.    Title IX has no application. ..................................................... 2

                b.    Defendants have no compelling interest in protecting students' purported right to be "left alone" on a college campus. ................................................................................... 4

            2.    Defendants' no-contact orders and policies do not use the least restrictive means. ........................................................................ 6

        B.    Defendants' no-contact orders and Policies violate the Free Exercise Clause. ...................................................................................................... 9

    II.    Plaintiffs meet the remaining preliminary injunction factors. ..................... 9

Conclusion ....................................................................................................................... 10

Certificate of Service ....................................................................................................... 11

TABLE OF AUTHORITIES

**Cases**

*Americans for Prosperity Foundation v. Bonta*,
  141 S. Ct. 2373 (2021) ............................................................................................... 7

*B.H. ex rel. Hawk v. Easton Area School District*,
  725 F.3d 293 (3d Cir. 2013) ....................................................................................... 4

*Berger v. City of Seattle*,
  569 F.3d 1029 (9th Cir. 2009) ................................................................................... 6

*Bey v. Rasawehr*,
  161 N.E.3d 529 (Ohio 2020) ..................................................................................... 7

*Brown v. Entertainment Merchants Association*,
  564 U.S. 786 (2011) .................................................................................................. 2

*C.R. v. Eugene School District 4J*,
  835 F.3d 1142 (9th Cir. 2016) ................................................................................... 8

*Cuviello v. City of Vallejo*,
  944 F.3d 816 (9th Cir. 2019) ..................................................................................... 2

*Demers v. Austin*,
  746 F.3d 402 (9th Cir. 2014) ................................................................................... 10

*Doe v. Valencia College*,
  903 F.3d 1220 (11th Cir. 2018) ................................................................................. 5

*Flood v. Wilk*,
  125 N.E.3d 1114 (Ill. App. Ct. 2019) ........................................................................ 7

*Healy v. James*,
  408 U.S. 169 (1972) .................................................................................................. 4

*Hill v. Colorado*,
  530 U.S. 703 (2000) .................................................................................................. 4

*Nuxoll ex rel. Nuxoll v. Indian Prairie School District # 204*,
  523 F.3d 668 (7th Cir. 2008) ..................................................................................... 4

*Oyama v. University of Hawaii*,
  813 F.3d 850 (9th Cir. 2015) ..................................................................................... 6

*Reno v. ACLU*,
  521 U.S. 844 (1997) .................................................................................................. 6

*Sweezy v. New Hampshire*,
  354 U.S. 234 (1957) .................................................................................................. 4

*Thompson v. Ragland*,
  23 F.4th 1252 (10th Cir. 2022) ............................................................................... 10

*Tinker v. Des Moines Independent Community School District*,
  393 U.S. 503 (1969) .................................................................................................. 5

*United States v. Playboy Entertainment Group, Inc.*,
  529 U.S. 803 (2000) .................................................................................................. 1

*Watters v. Otter*,
  986 F. Supp. 2d 1162 (D. Idaho 2013) ..................................................................... 6

**Regulations**

34 C.F.R. § 106.30 ............................................................................................... 2, 3, 8

34 C.F.R. § 106.44 ....................................................................................................... 2

85 Fed. Reg. 30026 ..................................................................................................... 3

INTRODUCTION

No doubt colleges have an interest in redressing unlawful harassment. But that's not what happened here. Plaintiffs Mark Miller, Peter Perlot, and Ryan Alexander responded to Ms. Doe's question and criticism by respectfully conveying their beliefs. Instead of preserving the University's role as the quintessential marketplace of ideas, Defendants censored Plaintiffs. Now—without any argument that Plaintiffs ever harassed Ms. Doe—Defendants claim that Title IX regulations and Ms. Doe's purported right to be "left alone" excuse contravening the First Amendment. But, as Defendants properly recognize, their no-contact orders and related Policies must meet the extreme demands of strict scrutiny. Defendants have no compelling interest. Nothing in Title IX requires Defendants to issue no-contact orders. And Plaintiffs could not have harassed Ms. Doe when she solicited their views; Plaintiffs respectfully conveyed those views; and Plaintiffs never discussed their religious beliefs with Ms. Doe either before or after the events in question. For similar reasons, Defendants' no-contact orders and Policies flunk the least restrictive means analysis. The orders prohibit *all* of Plaintiffs' speech with Ms. Doe and have chilled much of their other speech on campus. This case is a far cry from the rare situation where the government meets strict scrutiny. This Court should grant Plaintiffs' motion for preliminary injunction.

ARGUMENT

I. Plaintiffs will likely succeed on the merits of their First Amendment claims.

A. Defendants' no-contact orders and Policies fail free speech strict scrutiny.

Defendants recognize that both their no-contact orders and Policies must satisfy strict scrutiny as content-based regulations and prior restraints. [Dkt. 16 at 9, 11]. Content-based regulations and prior restraints are presumptively invalid, and the government bears a heavy burden to rebut that presumption. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 817 (2000); *Cuviello v. City of Vallejo*, 944 F.3d

1

816, 826 (9th Cir. 2019). Thus, very rarely will the First Amendment allow either. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). This is not one of those rare cases. Defendants neither have a compelling government interest nor employ the least restrictive means.

### 1. Defendants have no compelling interest to censor religious speech on campus.

Defendants argue they have two compelling interests justifying their no-contact orders and Policies: (1) complying with Title IX to preserve Doe's equal access to education and (2) preserving Doe's purported right to be "left alone." [Dkt. 16 at 10–11]. Neither is availing.

#### a. Title IX has no application.

Defendants have no Title IX interest because (1) nothing in Title IX requires Defendants to issue no-contact orders; and (2) Defendants do not—and could not— claim that Plaintiffs sexually harassed Ms. Doe. First, as Defendants recognize, Title IX regulations require the Title IX coordinator to "discuss the availability of supportive measures," "consider the complainant's wishes with respect to supportive measures," and "inform the complainant of the availability of supportive measures with or without the filing of a formal complaint." [Dkt. 16 at 6–7 (quoting 34 C.F.R. § 106.44(a))]. "Supportive measures *may* include" a no-contact order against a "respondent," that is "an individual who has been reported to be the perpetrator of conduct that could constitute sexual harassment." 34 C.F.R. § 106.30(a) (emphasis added). As explained below, this "conduct" cannot, consistent with the First Amendment, include the respectful, pure religious speech that occurred here. The regulations nowhere *require* the Title IX coordinator to issue no-contact orders or other supportive measures. To the contrary, a no-contact order must be "appropriate [and] reasonably available," and cannot "unreasonably burden[ ]" the respondent. 34 C.F.R. § 106.30(a). In line with the regulations, Defendants' *Title IX Policy* allows the

2

Title IX coordinator "sole authority to determine what supportive measures are to be implemented." [Dkt. 17 ¶ 62]. And if the coordinator denies a request for a supportive measure, she must merely document the reason why. [Dkt. 17-5 at 6].

Second, Defendants do not claim that Plaintiffs sexually harassed Ms. Doe. For good reason. As Defendants recognize, Title IX and Defendants' *Title IX Policy* define harassment to include "conduct on the basis of sex" that is "determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education program or activity." [Dkt. 17 ¶ 55]; *accord* [Dkt. 16 at 5–6 (quoting 34 C.F.R. § 106.30)]. The Department of Education retained this exceptionally high bar to avoid restricting protected speech. 85 Fed. Reg. 30026, 30163–65. Plaintiffs' respectful speech regarding their religious beliefs comes nowhere close to this standard, especially given that Doe understood Plaintiffs' religious beliefs yet solicited their opinions anyway. [Dkt. 17 ¶ 105]. Doe asked Plaintiffs Miller and Perlot why they believe marriage to be the union of one man and one woman. *Id.* And Doe spoke first at the ABA panel to criticize Plaintiffs' religious beliefs as "bigoted." *Id.* ¶ 124. Plaintiff Alexander merely responded—in that public forum—that Doe had in fact initiated the conversation with Plaintiffs Miller and Perlot and that he had observed religious discrimination on campus. *Id.* ¶ 127.

Plaintiffs never told Ms. Doe she would "swing from the gallows of hell." Perlot Decl. ¶¶ 2–3; Miller Decl. ¶¶ 5–6. *Contra* [Dkt. 16 at 2]. While Doe may have reported such a comment to Defendant Ewan, [Dkt. 16-1 ¶ 7], Ewan did not attend the "moment of community." Miller Decl. ¶ 7. In her interview with Plaintiff Miller after the "moment of community," Defendant Ewan never asked if Plaintiff Miller had made such a comment. *Id.* ¶ 9. Rather, Plaintiff Miller respectfully expressed his religious beliefs regarding sin and homosexuality. [Dkt. 17 ¶ 111]. And Plaintiff Alexander did not even attend the "moment of community" and only responded to Ms.

3

Doe's criticism at the public ABA panel. *Id.* ¶¶ 101, 127. Even so, a single instance—even if subjectively offensive—of religious speech comes nowhere close to Title IX's harassment definition. *See Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*, 523 F.3d 668, 676 (7th Cir. 2008) ("[I]t is highly speculative that allowing the plaintiff to wear a T-shirt that says 'Be Happy, Not Gay' would have even a slight tendency to provoke [harassment], or for that matter to poison the educational atmosphere."); *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 322–23 (3d Cir. 2013) (wearing bracelet saying "I ♥ Boobies" does not "breed an environment of pervasive and severe harassment").

### b. Defendants have no compelling interest in protecting students' purported right to be "left alone" on a college campus.

Defendants offer no citation for the novel proposition that students have an interest in avoiding speech as they walk about the grounds of a public university. To the contrary, the Supreme Court has time and again affirmed that the "college classroom with its surrounding environs is peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. 169, 180 (1972). Without the freedom "to inquire, to study and to evaluate," the Court has warned that "our civilization will stagnate and die." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).

Even outside the college campus, Defendants' "left alone" cases acknowledge that the First Amendment protects the "right to persuade." *Hill v. Colorado*, 530 U.S. 703, 717 (2000). After all, "[w]e are a social people and the accosting by one of another in an inoffensive way and an offer by one to communicate and discuss information with a view to influencing the other's action are not regarded as aggression or a violation of that other's rights." *Id.* A person's interest in freedom from "importunity, following and dogging" ripens only "after an offer to communicate has been declined." *Id.* at 718.

4

Before seeking the no-contact orders, Ms. Doe never told Plaintiffs to stop talking with her. *See* [Dkt. 17 ¶¶ 192–93]. Quite the opposite, she solicited their views—already knowing she disagreed with them. Neither have Plaintiffs "follow[ed]" or "dogg[ed]" Ms. Doe. *Contra* [Dkt. 16 at 11]. They merely responded to her questions and statements about their religious beliefs. Defendants do not claim that Ms. Doe ever reported Plaintiffs threatened her. Nor do they claim that Plaintiffs followed her or otherwise engaged in threatening conduct. Ms. Doe reported she was subjectively "frightened" that Plaintiff Perlot left a single note on her desk while she was not there. [Dkt. 16 at 3; Dkt. 17 ¶ 113]. But Defendants omit all mention of the note's contents—a simple offer to have a conversation and better understand each other's views. [Dkt. 17 ¶ 114]. And Defendants do not identify even a single statement or action of Plaintiff Alexander's that targeted or threatened Doe. [Dkt 16 at 3]. As Defendants recognize, Plaintiff Alexander merely "shared his concerns with the ABA panel." *Id.*

Defendants' case paints a helpful contrast. [Dkt. 16 at 11 (citing *Doe v. Valencia Coll.*, 903 F.3d 1220 (11th Cir. 2018))]. In *Doe*, the college suspended a male student who sent a female student "dozens of messages throughout the night making lewd references to her body." 903 F.3d at 1230. The female student made "repeated pleas that he stop contacting her," but "he continued to send unwanted messages over a period of days." *Id.* He even sent her 20 messages after the college imposed a time-limited no-contact order. *Id.* at 1227. Applying *Tinker*, the court concluded that the college could suspend the male student for invading the female student's right "to be let alone." *Id.* at 1229 (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969)).

Here, Defendants properly recognize that the First Amendment applies "on campus with no less force than when in the community at large," [Dkt. 16 at 8], rendering *Tinker*'s lower standard inapplicable. *See Oyama v. Univ. of Haw.*, 813

5

F.3d 850, 864 (9th Cir. 2015) (rejecting application of *Tinker* in college speech case because the court's analysis "would be constitutionally deficient if it did not reflect the special niche universities occupy in our constitutional tradition." (cleaned up)). What's more, Plaintiffs have not sent Doe dozens of lewd messages at all hours of the night and across a period of days after she repeatedly asked them to stop. At her prompting, they shared their views with her once. Neither before nor after the events in question have Plaintiffs ever discussed their religious beliefs with Doe. [Dkt. 17 ¶¶ 192–93]. If Doe does not want Plaintiffs to contact her, they will not. But Doe's desire does not mean that Defendants can legally forbid Plaintiffs from engaging in protected speech.

### 2. Defendants' no-contact orders and policies do not use the least restrictive means.

Defendants argue that their no-contact orders are the least restrictive means because (1) they only cut off Plaintiffs' speech to one student; and (2) Defendants do not consider the orders punitive or disciplinary. [Dkt. 16 at 10]. Neither contention passes muster.

Defendants' first argument fundamentally misunderstands the least restrictive means inquiry. "If the state wishes to regulate speech, then it must undertake the burden to show a precise nexus between *that* speech and some evil which the state has a right to prevent." *Watters v. Otter*, 986 F. Supp. 2d 1162, 1182 (D. Idaho 2013) (emphasis added). Defendants must show that restricting all of Plaintiffs' speech to Doe is the least restrictive means to achieving their end: "[E]ach activity within the proscription's scope" must be "an appropriately targeted evil." *Berger v. City of Seattle*, 569 F.3d 1029, 1053 (9th Cir. 2009). Defendants cannot "abridge[ ]" Plaintiffs' "exercise of [their] liberty of expression in appropriate places . . . on the plea that it may be exercised in some other place." *Reno v. ACLU*, 521 U.S. 844, 880 (1997). Thus, the cases that have struck down similar speech restrictions on narrow tailoring

6

grounds have done so because the bans prevented a person from saying "*anything* at all" to another party even though that person could still talk to anyone else. [Dkt. 7-1 at 19 (quoting *Flood v. Wilk*, 125 N.E.3d 1114, 1126 (Ill. App. Ct. 2019))]; *accord Bey v. Rasawehr*, 161 N.E.3d 529, 543 (Ohio 2020) (invalidating order that prohibited one party from "posting *anything* about" two other people).

What's more, Defendants ignore the immense chill their orders inflict. "Narrow tailoring is crucial where First Amendment activity is chilled—even if indirectly— because First Amendment freedoms need breathing space to survive." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2384 (2021) (cleaned up). Plaintiffs fear that expressing their religious views or opinions some may deem controversial—even in response to a direct question—could cause a listener to take subjective offense and lead to further no-contact orders, so they have self-censored. [Dkt. 17 ¶ 184]. For example, when discussing the forthcoming *Dobbs* decision—whatever it may be—in class, Plaintiffs must take care to avoid discussing their religiously informed beliefs on the matter and giving subjective offense, lest they incur Defendants' censorship. The orders do not simply cut off Plaintiffs' speech to Doe; they have restricted Plaintiffs' speech to others on a broad variety of topics.

Second, Defendants cannot wave their rhetorical wand to transform the gag orders into non-punitive action. *Contra* [Dkt. 16 at 3, 7, 10]. Regardless of the label Defendants want to use, their orders—admittedly—censor Plaintiffs' speech. *Id.* at 10. Defendants' concession that the orders must meet strict scrutiny belies any argument that they do not implicate weighty First Amendment considerations.

The gag orders also show their punitive nature on their own face. If Plaintiffs disobey the orders, they risk punishment up to expulsion. [Dkt. 17 ¶ 143]. And contrary to Defendants' ipse dixit, [Dkt. 16 at 10], Plaintiff Perlot reported the gag order to the Oregon Bar. Perlot Decl. ¶ 11. In fact, that bar application *requires* applicants to disclose any "no contact order[s]" they have received and warns that

7

"[l]ack of complete candor" could lead to "denial of admission to the bar." *Id.* ¶¶ 9–10. The orders still apply to graduated students. They have no expiration date or geographic limitation. [Dkt. 17 ¶¶ 140–41]. If Plaintiff Perlot violates the order now, Defendants may hold it against him if he applies to another degree program or employment at the University or even if he simply wants to visit campus as an alumnus.

Defendants ignore a host of readily apparent less speech-restrictive alternatives. Both Title IX regulations and Defendants' *Title IX Policy* provide numerous examples of other supportive measures that Defendants could have used to respond to Doe's complaint instead of immediately censoring Plaintiffs. Defendants could have offered Doe deadline extensions or other classwork related adjustments, modification of class schedules, virtual class attendance, excused absences or a leave of absence, check-ins with administrators, counseling, or campus escort services, to name a few. *See* 34 C.F.R. § 106.30(a); [Dkt. 17-5 at 5–6]. Defendants provide no evidence that these much less restrictive alternatives fail to advance their interests. And in this purported Title IX case devoid of *any* allegation of actual harassment, Defendants have no such evidence.

As to their Policies, Defendants claim that they only relied on their *Title IX Policy* and not their *Discipline Policy* to issue the gag orders. [Dkt. 16 at 12 & n.3]. But the *Title IX Policy* and *Discipline Policy* are both facially invalid because they license prior restraints and grant unbridled discretion to take "appropriate" supportive measures. [Dkt. 7-1 at 21–25; Dkt. 17 ¶ 56]. And courts only owe deference to Defendants' "reasonable" interpretation of their policies. *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1148 (9th Cir. 2016). It's unreasonable for Defendants to contradict the plain text of their *Discipline Policy* which allows the "[i]ssuance of a no-contact order." [Dkt. 17 ¶ 69]. It's all the more unreasonable when Defendant Ewan

8

contemporaneously told Plaintiff Perlot that the *Discipline Policy* allowed him to appeal the no-contact order. [Dkt. 17-20 at 2].

Defendants offer only one argument to justify their Policies on least restrictive means: Title IX requires them. [Dkt. 16 at 13]. That's wrong. *Supra* Section I.A.1.a. And the Policies offer no procedural safeguards nor require Defendants to make any findings why censorship is appropriate in a particular case—never mind as the first step. [Dkt. 7-1 at 22]. Instead, the Policies allow Defendants "sole authority" to decide when to issue no-contact orders and even call for their "routine[ ] issu[ance] in Title IX cases," regardless of the underlying allegations and availability of other supportive measures. [Dkt. 17 ¶¶ 62, 71–73]. Defendants' position is untenable. If subjective offense remains the no-contact order lodestar, campus will devolve into a patchwork of censorship. Soon, Plaintiffs, and others, may not be able to speak to each other about many topics. Routine issuance of prior restraints cannot be the least restrictive means to any government interest.

### B. Defendants' no-contact orders and Policies violate the Free Exercise Clause.

Defendants claim that the no-contact orders impose only an "incidental burden" on Plaintiffs' free exercise because they can still share their beliefs with "anyone else." [Dkt. 16 at 14]. That's wrong as a factual matter. The no-contact orders and Policies have chilled Plaintiffs from talking about their religious views on campus at all. [Dkt. 17 ¶¶ 186–90]. And it misapprehends the proper legal inquiry. Defendants imposed the no-contact orders *because of* Plaintiffs' religious speech about marriage. [Dkt. 7-1 at 26]. They did not punish other students who expressed opposing views on marriage. *Id.* That shows impermissible hostility to Plaintiffs' religious beliefs, *id.*, regardless of Defendants' post hoc estimation of the burden on free exercise.

## II. Plaintiffs meet the remaining preliminary injunction factors.

Plaintiffs have a likelihood of success on the merits. *Supra* Part I. Qualified immunity has no application to this motion for equitable relief. *Demers v. Austin*, 746

F.3d 402, 417–18 (9th Cir. 2014). *Contra* [Dkt. 16 at 14]. Nor would Defendants benefit from qualified immunity. *See Thompson v. Ragland*, 23 F.4th 1252, 1259–60 (10th Cir. 2022) ("easy" case for denying qualified immunity when official issued no-contact order to college student). And the injunction would not cause Defendants substantial harm. *Contra* [Dkt. 16 at 15]. It would not enjoin them from complying with federal law because Title IX does not require Defendants to issue no-contact orders. *Supra* Section I.A.1.a. Plaintiffs have never argued that Defendants could not issue no-contact orders in cases of actual unlawful sexual harassment. When contact between members of the University community poses a threat to physical safety or is necessary to stop unlawful harassment as defined by Title IX, Defendants likely will have little difficulty meeting First Amendment requirements. But Defendants must ensure that each no-contact order is appropriately tailored to their interest and that their Policies provide both substantive and procedural safeguards to ensure that what happened to Plaintiffs here will not happen again. *See* [Dkt. 7-1 at 17–25].

## CONCLUSION

This Court should grant Plaintiffs' motion for preliminary injunction.

Respectfully submitted this 20th day of May, 2022.

|  |  |
|---|---|
|  | */s/ Mathew W. Hoffmann* |
| Matthew C. Williams | Tyson C. Langhofer* |
| ID Bar No. 6271 | VA Bar No. 95204 |
| WILLIAMS LAW, PLLC | Michael R. Ross* |
| 812 First St. S. | TN Bar No. 35304 |
| Nampa, ID 83651 | Mathew W. Hoffmann* |
| Telephone: (208) 908-6066 | DC Bar No. 1617417 |
| matt@williamslawoffice.net | ALLIANCE DEFENDING FREEDOM |
|  | 44180 Riverside Pkwy |
|  | Lansdowne, VA 20176 |
| *Counsel for Plaintiffs* | Telephone: (571) 707-4655 |
|  | Facsimile: (571) 707-4790 |
| **Admitted Pro Hac Vice* | tlanghofer@ADFlegal.org |
|  | mross@ADFlegal.org |
|  | mhoffmann@ADFlegal.org |

10

CERTIFICATE OF SERVICE

I hereby certificate that on May 20, 2022, I filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to the following attorneys of record:

Katharine B. Brereton
Peter C. Erbland
Lake City Law Group PLLC
435 W. Hanley Avenue, Suite 101
Coeur d'Alene, ID 83815
kbrereton@lclattorneys.com
perbland@lclattorneys.com
Telephone: (208) 664-8115
Facsimile: (208) 665-6338

*Counsel for Defendants*

Dated: May 20, 2022            */s/ Mathew W. Hoffmann*
                               Mathew W. Hoffmann
                               *Counsel for Plaintiffs*